JOHN DEAN, RESPONDENT, *v.* WILLIAM WOODWARD, JR.,
AND JAMES STILLMAN, APPELLANTS.

*Broker employed to sell merchandise — presumption as to the period of his employment*

Where a broker, engaged in procuring sales of merchandise, enters upon such employment without any definite term thereof being fixed, and continues such service through a series of years upon substantially the same terms of compensation as are first agreed upon, the parties, at the end of each year, settling their accounts in regard to such services, and the employer paying at such time the compensation found to be due therefor, and at the beginning of each year furnishing samples of the merchandise to be sold, and the broker procuring purchasers thereof, a decision of the trial court that the original con-

tract of hiring was for one year, and was thereafter renewed from year to year upon the same terms by mutual consent, will not be disturbed on appeal.

Under such circumstances there exists no right on the part of the employer, should the trial court hold that there was an employment from year to year, to terminate the same by notice in the middle of the season of such employment; the same can only be terminated at the end of the year.

APPEAL by the defendants from a judgment of the Supreme Court, entered, upon the report of a referee, in the office of the clerk of the county of Rensselaer on the 4th day of September, 1888, in favor of the plaintiff for $464.65.

*Henry A. King,* for the appellants.

*James Lansing,* for the respondent.

LEARNED, P. J.:

About September 1, 1883, the plaintiff agreed to sell cotton for defendants as a broker. His compensation was to be fifty cents per bale for all sales he should make, and twenty-five cents for all trade that he introduced where manufacturers should send orders direct to defendants. It does not appear that his employment was for any specified time; nor is it expressly stated for how long a time he was to have the benefit of the twenty-five cents per bale for the trade introduced by him. But he says that he settled " for that year " on that agreement; and he does not seem to claim that, *on that agreement solely,* his right to the twenty-five cents per bale lasted beyond the year.

On August 22, 1884, the defendants wrote the plaintiff a letter in which the terms of brokerage to be done by plaintiff are stated in substantially the way above set forth. The plaintiff states that on these terms he sold for defendants during what he calls the cotton year of 1884 and of 1885, and that he settled on these terms for the sales of that year. He alleges in his complaint that about September 1, 1886, he and they renewed the agreement for another year, and that he entered upon its performance. On January 15, 1887, defendants wrote him that they must end their arrangement and that thereafter they would allow him brokerage only on such sales as he should make for them. In April, July and August, 1887, defendants sold to certain customers, cotton amounting to 1,140 bales. On these sales the plaintiff claims twenty-five cents per bale; and the referee has allowed this claim on the ground that sales had

been previously made to those customers through the efforts of plaintiff. These customers were the Shenandoah Mill, Warner, De Forest & Co., The Mount Ida Company, The Vermont Mill and Robert Amblett.

If we look at plaintiff's own testimony, we shall find that of these customers he made direct sales after August 1, 1886, and before January 15, 1887, to the Vermont Mills and the Mount Ida Company. He does not remember any others and he does not claim to have sold to any others of these customers, between August 1, 1886, and January 15, 1887. The referee therefore, in respect to the others of these customers, must have allowed the plaintiff to recover on the ground that, in years prior to August 1, 1886, the plaintiff had sold to them.

The basis of plaintiff's claim is that his employment in each instance was for the year, for what he calls the cotton year; and he states that he settled with defendants on the terms aforesaid for the services of the respective years. The referee finds that, about September 1, 1886, the contract was renewed for the year. Now there is nothing express in the contract showing for how long a time the plaintiff was to continue to receive twenty-five cents per bale for cotton sold by defendants directly to customers. It is hardly possible that the agreement made, for instance, in September, 1883, was that for all time to come the defendants should pay the plaintiff twenty-five cents on every bale which they should sell to a customer introduced by him. This would be, as said in their letter, a royalty for all time. And the plaintiff places no such construction on the agreement, otherwise he could not have settled at or about the end of the respective years for his services.

The plaintiff then must have claimed that for any sales made by defendants directly during the year, for which he was employed by them, to persons whom he had, during that year, obtained as customers, he should have his twenty-five cents ber bale. When, then, about the 1st of September, 1886, plaintiff applied for employment again, he had, as he says, settled for the sales of the year then past. The contract then made was a new agreement, and the plaintiff's rights depend on that new agreement.

The plaintiff's claim is that, under that agreement then made, he is entitled to more compensation than he has received for the work

which he has done. He does not seek to recover for work which he might have done if he had not been discharged. But his claim is that, for the work which he did, he is entitled to further compensation, that is to say, for the twenty-five cents a bale for sales made directly by the defendants to customers whom he had procured. Plainly, this claim must be limited to those customers whom he had procured during that year, because the agreement was, as he says, renewed about September 1, 1886. The renewal did not imply that he was to be further compensated for customers whom he had previously obtained. It implied only that for work done after September 1, 1886, he should be compensated on the old terms, viz., fifty cents per bale for sales made though him; twenty-five cents for sales made directly to customers whom he should procure, not to those whom he had previously procured. If the latter construction were correct, he would be entitled to the twenty-five cents, even though there had been no renewal of the agreement about September 1, 1886. In this view he can recover only on the bales sold to the Vermont Mill and the Mount Ida Company, 200 in all.

Judgment reversed, new trial granted, referee discharged, with costs in this court to the defendant, unless the plaintiff shall elect, within twenty days after service of copy of this order, to reduce his recovery to fifty dollars, and interest from the commencement of this action, and the costs below, in which case the judgment, so reduced, is affirmed, without costs in this court.

LANDON, J., concurred.

INGALLS, J. :

In August, 1883, a verbal agreement was entered into by the parties hereto, by which the plaintiff was employed by the defendants to sell cotton upon the following terms: The plaintiff was to receive as his compensation fifty cents for every bale of cotton the sale of which should be directly negotiated by him, and twenty-five cents for every bale in the sale of which he obtained the customer, and the defendants perfected the sale either by direct interview or through correspondence with the customer. The agreement did not, in express terms, prescribe the length of time the plaintiff's employment should continue; nor does it appear that the parties subsequently, by express agreement, created any limitation to the time of service.

The plaintiff entered upon such employment on the 1st of September, 1883, and was provided with samples of cotton, by the defendants, to enable him to make sales. The plaintiff continued in such service during the year, receiving, from time to time, money from the defendants as payments for his services, and at the expiration of such year the parties settled their accounts, and the plaintiff received whatever was his due for the service rendered by him. The relation between the parties in regard to such employment by the plaintiff, continued from year to year, without any material change either in the terms of their agreement or in regard to the manner the business was transacted between them, until September 1, 1886, when the plaintiff visited the defendants at their place of business and inquired of them in relation to his continuance in their service, and as the result of the interview he was furnished by the defendants with samples, and resumed his work. The plaintiff states the interview as follows:

" I reside in the city of Cohoes at present ; my business is cotton and wool broker ; have been engaged in that business about fifteen years and know defendants Woodward & Stillman ; they do business in the city of New York ; they are cotton merchants ; I made their acquaintance on or before 1883 ; I visited their place of business about September 1, 1883 ; I met there Mr. Woodward ; I had some conversation with him ; at my interview with Mr. Woodward I talked with him in relation to selling cotton to manufacturers for their account ; I said I had an outlet where I thought I could place considerable cotton for them, and I told him my terms would be fifty cents per bale for all sales of cotton I should make for their account ; and that all trade that I introduced, when such manufacturers should send orders direct to the house, I was to receive twenty-five cents per bale ; and, also, such trade as was made by Woodward and Stillman, where I had introduced customers to the defendants or where Mr. Woodward corresponded with customers afterwards ; they gave me samples, and I sold through that year ; I do not recollect the number of bales I sold ; we settled for that year by that agreement ; I visited them at the commencement of the cotton year of 1884, and several times during the year, and I got samples during 1884 to 1885 ; at the commencement of cotton year of 1885 I received samples to sell by the same terms for the

sales of that year; I went there again at the commencement of the cotton season of 1886, first of September; I had an interview with Mr. Woodward, and I inquired if he had any samples ready; he hesitated for a little while; he inquired from one of his clerks, a bookkeeper; he inquired what amount of cotton I sold the year prior, and on Mr. Woodward reading the amount he came back and in my presence told the parties to forward samples to me; and I received the samples and continued the business of 1886 to 1887 upon the same terms. Q. Were any or different terms made? A. No, sir; the Shenandoah Cotton Company were customers whom I had introduced to them; the Mount Ida Manufacturing Company were customers that I had introduced to them, and the Vermont Mills also, and Robert Amblett and Warner, De Forest & Co. also, all prior to January 15, 1887.

It is admitted that the defendants were copartners and sold to the Shenandoah Cotton Company 500 bales of cotton August 23, 1887, and 300 bales of cotton to Warner, De Forest & Co., of Amsterdam, N. Y., February 7 and 8, 1887, and 120 bales to Warner, De Forest & Co., August 24, 1887, and 180 bales to the Mount Ida Company, Troy, on the 3d and 4th days of April, 1887, and twenty bales to the Vermont Mills on the 26th day of July, 1887, and twenty bales to Robert Amblett, of Little Falls, on the 5th and 27th days of July, 1887. The witness further stated: I never received any pay for the sale to either of those parties; none of these sales were made direct by me. On the 15th day of January, 1887, the defendants addressed to the plaintiff the following letter:

"NEW YORK, *January* 15, 1887.

"Mr. JOHN DEAN, *Troy, N. Y.:*

"DEAR SIR. — The season is passing and our sales through you amount to little or nothing comparatively. The country which we have allowed you is large, and there is a large consumption of cotton therein, and we cannot afford to be longer excluded from the trade, and we must end our arrangement and make some other. We will only hereafter allow you brokerage on such sales as you may make for us. "Yours, very truly,

"WOODWARD & STILLMAN,

"Per B."

The plaintiff made no reply in writing to such letter, but subsequently an interview occurred between the parties, as to the purport of which they disagreed in their evidence upon the trial; and it was the province of the referee to determine whose version of that conversation was most reliable. The statement of the plaintiff in relation thereto seems consistent with the claim which he makes that his term of service extended to the close of the year, September 1, 1887. It will be perceived that the letter did not purport to wholly terminate the relation between the parties, but merely to modify the agreement, restricting the plaintiff to compensation for direct sales which he should subsequently make. At the trial the plaintiff disclaimed any intention of seeking compensation for direct sales. And so the referee has found. The plaintiff only claimed to recover twenty-five cents per bale upon the 1,140 bales which the defendants admitted at the trial, as above stated, that they had sold as follows: Five hundred bales to the Shenandoah Cotton Company, August 23, 1887; 300 bales to Warner, De Forest & Co., February 7 and 8, 1887; 120 bales to the same firm August 24, 1887; 180 bales to Mount Ida Manufacturing Company on the 3d and 4th days of April, 1887; twenty bales to the Vermont Mills on the 26th day of July, 1887; twenty bales to Robert Amblett, on the 5th and 27th days of July, 1887. According to the evidence on the part of the plaintiff, all such sales were made by the defendants to parties who had been introduced as customers by the plaintiff to the defendants, and he states that he has received no compensation from the defendants, based upon such sales, which were made to customers whom he had introduced to defendants. The referee, as appears by his report, has allowed the plaintiff twenty-five cents for each bale of cotton embraced in such sales, and for nothing else. The following facts found by the referee:

"IV. That the cotton season or year in defendants' business begins about the first of September in one year and ends about the same time in the next.

"V. That about the month of August, 1883, the defendants entered into an agreement with the plaintiff, whereby it was provided that the plaintiff should travel and sell cotton for defendants to manufacturers from samples to be furnished him by defendants, and that said defendants should pay him for such services the

sum of·fifty cents for each bale of cotton, the sale of which should be directly negotiated by the plaintiff, and that in all cases where the plaintiff should obtain a customer or customers, and subsequent sales should be made by defendants to plaintiff's said customers, either by direct interview or by correspondence with them, the plaintiff should receive twenty-five cents per bale for each bale so sold by defendants to said customers.

VI. That said plaintiff entered upon said employment, having accepted said terms and sold cotton for the defendants through that year, and the defendants settled with and paid plaintiff for his services rendered during that year in accordance with said agreement.

VII. That the plaintiff thereafter continued in the employment of defendants from year to year, under said agreements, defendants furnishing samples and plaintiff receiving the stipulated compensation for sales made directly and indirectly by him. That at the commencement of the cotton season for the years 1886, 1887, and about September 1, 1886, the plaintiff and defendants *had an interview at which said contract was renewed for the ensuing cotton season or year*, and the plaintiff entered upon his employment thereunder. That said employment was for and during the year commencing about September 1, 1886, and ending September 1, 1887.

VIII. That during the cotton year or season commencing about September 1, 1886, and ending September 1, 1887, the defendants sold, either through correspondence or personal interview with the parties, cotton, as follows : Shenandoah Cotton Company, 500 bales; Warner, De Forest & Co., 2 lots, one of 300 bales, and one of 120 bales; to the Mount Ida Manufacturing Company, 180 bales; to the Vermont Mills, 20 bales ; and to Robert Amblett, 20 bales ; aggregating 1,140 bales. That each and every of said bales of cotton were sold to parties to whom sales of cotton had previously been made by, and *through the efforts and negotiations of plaintiff, and each of said purchasers were customers furnished or introduced to the defendants by the plaintiff*. That, under and pursuant to the terms and conditions of said contract and agreement between plaintiff and defendants, the plaintiff thereupon became entitled to demand and receive of the defendants the sum of twenty-five cents for each and every bale so sold to said parties as aforesaid, the same amounting in the aggregate to $285. That no part of said sum has been paid.

Assuming, therefore, that the facts and the conclusion therefrom are correctly found by the referee, it remains to be determined whether his conclusion in regard to the law applicable thereto is defensible. The referee has found, as conclusions of law, the following:

I. That there was a valid and subsisting agreement between the defendants and the plaintiff for the employment of the plaintiff during the year commencing *September* 1, 1886, *and ending September* 1, 1887; that said employment was entered upon and was in all respects performed by the plaintiff upon his part.

II. That, under and by virtue of said contract, the defendants became bound to pay the plaintiff twenty-five cents for each bale of cotton which they might sell through their own correspondence or by personal interview during that year to persons who were, or theretofore had been, introduced to them as customers by the efforts of plaintiff.

III. That the plaintiff should have judgment against the defendants for the sale of said 1,140 bales of cotton, at twenty-five cents per bale, amounting to the sum of $285, together with interest thereon from September 1, 1887, amounting, at the date of this report, to seventeen dollars and ten cents, making a total of $302.10, besides the cost of this action.

The counsel for the plaintiff contends that, although the original agreement omitted to specify the length of time the plaintiff's employment was to continue, yet, considering the nature of the business and the manner it was conducted, and the situation of the parties, that the term of service should be considered in legal effect one year, and that the continuance from year to year, for a series of years, without any material change in the terms of the agreement, should be regarded as a contract of hiring and service from year to year; and that the relation thus created could only be terminated by either party by a notice, taking effect at the close of the current year. That as such year commenced on the 1st day of September, 1886, it could not be terminated by the letter addressed to the plaintiff January 15, 1887, so as to deprive the plaintiff of compensation, based upon the sales made by the defendants previous to September 1, 1887, to customers who had been introduced by plaintiff. Whether an agreement, like the one in question, which contains no express limit as to the duration of the term of employment,

can be regarded in law as a hiring for a year, presents a question of no little difficulty, owing to the want of uniformity in the decisions upon the subject by the courts in this country and in England, and in the views expressed by elementary writers. In Smith's Mercantile Law (Am. ed.), at page 426, the author states: "If there be no specified agreement, but the hiring is a general one, *without mentioning time*, it is considered to be for a year certain. If the servant continue in employment beyond that year, a contract for a second year is implied, and so on." At page 427 he says: "It follows, from what is above stated, that if the master dismiss his servant, hired generally, without cause, the latter will have a right to wages *up to the expiration of the year.*" In Smith's Law of Master and Servant (Am. ed.), page 75, the rule is thus stated: "Where no time is limited, either expressly or by implication, for the duration of the contract of hiring and service, the hiring is considered as a general hiring, and in point of law *a hiring for a year.* This rule was applicable to all contracts of hiring and service, whether written or unwritten, whether express or implied, and whatever be the nature of the service." In *Beeston* v. *Collyer* (4 Bing., 309; 13 Eng. Com. Law, 518), BEST, Ch. J., says: "If a master hire a servant *without mention of time, that is a general hiring for a year,* and if the parties go on four, five or six years, a *jury would be warranted in presuming a contract for a year in the first instance, and so on for each succeeding year* as long as it should please the parties; *such a contract being implied from the circumstances,* and not expressed, a writing is not necessary to authenticate it." In *Williams* v. *Byrne* (7 Adol. & Ell., 177; 34 Eng. Com. Law, 115) LITTLEDALE, J., remarks: "It appears not to be disputed that the parties were, at any rate, bound to the end of the first year. I think their position was the same in all the subsequent years Therefore, when any year had commenced, the *service was to run on to the end.* And this way to continue as long as the parties pleased, that is, till one of them determined the engagement by reasonable notice *expiring at the end of the current year.*" In *Fawcett* v. *Cash* (5 Barn & Adol., 908; 27 Eng. Com. Law, 382) DENMAN Ch. J., says: "The general rule is that if a master hire a servant without *mentioning the time,* that is a general hiring, and in point of law a hiring for a year." In Chitty on Contracts (9th

Am. ed.), 589, the author says: "With regard, however, to cases other than domestic or menial servants, there is no inflexible rule of law that a general or indefinite hiring is a hiring for one year, and the question *must, therefore, be considered in connection with the circumstances of each particular case.* But it appears that if there be no evidence to the contrary, the general engagement of a clerk will be deemed *to be a yearly hiring."* In *Baxter* v. *Nurse* (46 Eng. Com. Law, 934) TINDALL, Ch. J., remarks: "Upon the first ground on which the present motion was made, namely, that the jury ought to have been directed, as upon a general rule of law, that the hiring in this case must be taken to have been by the year, it appears to me that the principle on which contracts of this nature, which have been entered into without any definite arrangement as to time, are held to be contracts for a year, is by *no means an inflexible rule,* but that is a presumption to be raised from contracts of the same kind; and that the judge at a trial is not authorized to lay down any general rule upon the subject." In Wood's Law of Master and Servant (page 283) the author says: "With us, the rule is inflexible that a general or indefinite hiring *is, prima facie,* a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof." Story on Contracts (vol. 2, § 962) contains the following: The author, after stating the rule as to domestic and menial servants in regard to terminating their employment, pursuant to custom by notice of thirty days, remarks: "But this condition is only applicable in cases of menial or domestic services, and. does not apply to trade servants, servants in husbandry, clerks, overseers or governesses, and servants in similar stations. In such cases the contract cannot be determined *until the end of the year."* (Sec. 963.) "But contracts with other than domestic and menial servants, when the service is *from year to year,* notice must be given so as to expire with the end of the year, the contract not being determinable during the year." In *Greer* v. *The People's Telegraph and Telephone Company* (50 Superior Ct., 517), which was a hiring for *one year,* from September 1, 1881, and the servant remained in service until the close of the year, and continued on until October 31, 1882, when he was discharged without his consent, SEDGWICK, Ch. J., remarks: "On these facts the law is, that the remaining in the service for any time by the consent of

the employer, renews the first contract for one year, or, if there had been *no hiring in the first place expressly for one year*, the law implies a contract for service for that time ; and, also, if there be a continuance of services after that time, a renewal for one year." It seems to be established, by the decisions of the courts of this State, that when, by the contract of hiring, the time is *expressly stated* to be for one year, that a holding over will be regarded in law as hiring for another year, and so on from year to year; and in such case the employment can only be determined by a proper notice to take effect at the end of the current year. In *Wallace* v· *Devlin* (36 Hun, 275) ; *Vail* v. *Jersey L. F. Manufacturing Company* (32 Barb., 564) ALLEN, J., says : "A continuance in the employment with the consent of the defendants, after the expiration of the current year, was equivalent *to a new hiring upon the same terms.*" Extracting from the foregoing decisions the legal doctrine applicable to this case, we conclude that it may be safely and properly held that, regarding the nature of the service which the plaintiff undertook to render, and the terms of his employment, and the fact that such service was continued through a series of years upon substantially the same terms, and that at the end of each year the parties settled their accounts in regard to such hiring and service, and payment was made to the plaintiff of any balance which was then due him, and that the plaintiff was furnished samples of cotton and allowed each year to resume the work; and particularly that, on the 1st of September, 1886, the plaintiff visited the defendants, and an interview occurred between them at the defendants' place of business in regard to the continuance of the plaintiff in defendants' service, and that the plaintiff was again provided with samples of cotton by the defendants and allowed to enter upon the same service, we conclude that it became, at least, a question of fact for the referee to determine whether the parties did not understand and intend that the original contract of hiring was for one year, and that thereafter the same was renewed from year to year upon the same terms by mutual consent; and especially whether what occurred between them on the 1st of September, 1886, did not amount to a recognition of such a relation, and to a renewal of the contract of hiring and service upon the same terms for another year ending on the 1st of September, 1887. In *Tatterson* v. *Suffolk Manufacturing*

*Company* (106 Mass., 56) WELLS, J., at page 60, remarks : " They did enter into some agreement by the mere fact of continuing their relations of employment and service. It was a relation of contract. The terms of the contract, in the absence of express words, are to be ascertained, not alone by what occurred within the year, but also from all that had transpired previously. From all the evidence the jury must determine, as an inference of fact, what was the understanding with which the parties entered upon the second year of employment and service ; that, when found, constitutes their contract." (See, also, *Beeston* v. *Collyer, supra.*) In this case the referee has found, as a fact, the following : " That at the commencement of the cotton season for the years 1886, 1887, and about September 1, 1886, the plaintiff and defendants had an interview at which said contract was renewed for the ensuing cotton season or year, and that the plaintiff entered upon his employment thereunder ; that said employment was for and during the year commencing about September 1, 1886, and ending September 1, 1887. We think the evidence sustains such finding of fact. Upon such finding the referee based a legal conclusion that the letter of January 15, 1887, did not have the effect to cancel the contract or to terminate the plaintiff's employment. In such determination we think he committed no error. In regard to the amount which the plaintiff should recover, the evidence does not furnish a very satisfactory basis upon which to estimate the same. The counsel for the plaintiff insists that the action was tried upon a conceded theory, that in the event that the plaintiff established a legal cause of action, he should be entitled to recover twenty-five cents upon 1,140 bales of cotton which the defendants admitted that they sold to certain customers named, and who, as the plaintiff testified, he introduced to the defendants, and upon which sale he had received no compensation. It is quite possible that the referee may have adopted and acted upon such theory in determining the amount which the plaintiff was entitled to recover. It is unfortunate that the facts were not more fully developed at the trial upon that branch of the case instead of being left to be inferred, so that this court could discover from the evidence a satisfactory basis upon which to sustain the conclusion of the referee in regard to the amount which he awarded

to the plaintiff as his damages. From all the facts disclosed and the legal principles which we deem applicable to them, we conclude that the plaintiff's recovery must be restricted to the two sales of cotton, amounting to 200 bales, which were made by the defendants to customers who the plaintiff testified he had introduced to the defendants subsequent to the letter of January 15, 1887. A computation at twenty-five cents per bale, made upon the 200 bales, amounts to fifty dollars, which sum the plaintiff is entitled to recover, with the interest thereon, from the time of the commencement of the action. The plaintiff should be allowed to stipulate to accept such amounts, with costs of the action, except in this court, and avoid the delay and expense of another trial. But in case the plaintiff declines so to stipulate, a new trial should be directed before another referee, with costs to abide the event of the action.