## BRIGHTSON v. H. B. CLAFLIN CO.

(Supreme Court, Appellate Division, Second Department. June 5, 1903.)

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—RENEWAL.

A servant was employed under a five-year contract, and shortly before the expiration of the contract stated to his employer that if there was to be any change in the contract he desired seasonable notice thereof. The employer said that they had been in business together for some years, and that he hoped this would continue for years to come. *Held*, that there was no renewal of the contract for a five-year term.

2. SAME—CONTRACT FROM YEAR TO YEAR—EVIDENCE.

Where, on the expiration of a contract of employment for a five-year period, the employer stated, in response to a question by the employé as to whether there was to be any change in their existing relations, that he hoped that such relations would be continued for many years to come, and the employé continued service without any further arrangement for three years thereafter, a finding that the contract had been renewed as one from year to year was justified.

3. PLEADING—TRIAL—AMENDMENT TO CONFORM TO EVIDENCE.

Where the complaint sought recovery for breach of a five-year contract of employment, and the evidence showed a contract of employment from year to year, it was proper to consider the complaint as amended to conform to the evidence, under Code Civ. Proc, § 723, providing for such amendments.

4. CONTRACT OF EMPLOYMENT—BREACH—JUSTIFICATION—EVIDENCE.

In an action by a servant for breach of a contract of employment, evidence considered, and *held* to sustain a jury finding that the employer was not justified in terminating the contract.

Appeal from Trial Term, Nassau County.

Action by George E. Brightson against the H. B. Claflin Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J.; and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

John L. Wilkie (Moses Ely, on the brief), for appellant.
Sidney H. Stuart, for respondent.

WOODWARD, J. The plaintiff, who had been in the employ of the defendant and its predecessor for a period of 15 years or. more, brought this action to recover $50,000 for the breach of an alleged contract of employment for a term of 5 years from the 1st day of January, 1899, he having been discharged on the 21st day of August, 1900, without, as the plaintiff claims, and the jury has found, any just cause or provocation. The defendant denied the existence of the contract as alleged in the complaint, and justified the discharge of the plaintiff upon the grounds that his employment at the time was at the pleasure of the employer, and that the conduct of the plaintiff justified his discharge, and these were the questions litigated upon the

trial. The jury has found in favor of the plaintiff in a verdict for
$5,000 damages, and from the judgment entered the defendant ap-
peals to this court.

It appeared upon the trial that the plaintiff, in June or July, 1885,
entered into a written contract with the firm of H. B. Claflin & Co.,
by the terms of which he was permitted to draw $500 per month,
with 10 per cent. additional at the end of the year upon the net profits
of the notion department, which was given into his charge, subject to
the general directions of the firm. In 1888 this contract was changed,
so that the plaintiff drew, in addition to his $500 per month, 12½
per cent. of the net profits. He continued under this contract until
the 30th of November, 1892, when the present defendant corpora-
tion became the successor of the firm of H. B. Claflin & Co., and the
plaintiff's contract was renewed for a period of five years from the
1st day of January, 1893, expiring by its terms on the 1st day of Janu-
ary, 1898. In the latter part of the year 1897 the plaintiff, knowing
that his contract was about to expire, went to Mr. Claflin, the presi-
dent of the corporation, and said to him that as his contract would
expire on the following year he desired, if there was to be any change,
or any material modification of the contract, that he be notified sea-
sonably of the fact. To this Mr. Claflin is said to have replied that
he and plaintiff were of about the same age; that they had been in
business together for some years; and that he hoped that this would
continue for years to come, or words to that effect; and it was upon
this basis that the plaintiff claimed a renewal of the contract for a
period of five years. The learned trial court held, and properly we
believe, that the evidence did not support this contention, but per-
mitted a finding that the plaintiff was employed from year to year
under the terms of the old contract, and that the plaintiff, having
served through 1898, 1899, and a portion of 1900, must be deemed
to have been engaged for the full year, and to have been entitled to
recover not only the salary which he had not drawn, but 12½ per
cent. upon the probable net profits of the business of his department
if he had been permitted to continue the employment; this being
determinable only at the close of the year, under the terms and
practices of the original contract. While this is not in exact accord
with the pleadings, we are of opinion that the evidence fully sup-
ported this view of the question, and that the pleadings may be
deemed to have been amended in accordance with the facts proved
for the purposes of this appeal, under the provisions of section 723
of the Code of Civil Procedure. If the pleadings had alleged a con-
tract for one year there would have been no doubt, under the cir-
cumstances, that the law would infer from the facts that the defend-
ant had acquiesced in the renewal of the old contract for that period
(Dean v. Woodward, 52 Hun, 421, 5 N. Y. Supp. 593; Ball v. Stover,
82 Hun, 460, 31 N. Y. Supp. 781); and we see no reason why the
evidence does not support this conclusion, and justify the court in
assuming that the pleadings have been amended to meet the proof.

The more serious question is presented by the evidence upon the
question of the defendant's justification for the discharge of the plain-
tiff. The evidence, it may be assumed—for it was not seriously ques-

tioned—established that in the inventory for the year 1899 certain goods, aggregating in value about $40,000, and which had been credited to the department for sales made, were included in the list of goods on hand, so that the department had a credit of $40,000 to which it was not entitled, and which resulted in commissions to the plaintiff of approximately $5,000 in excess of what would have resulted had not this error in the calculation been made. This condition of affairs was brought to light by an inventory of the book stock in the notion department during the absence of the plaintiff, and after the latter had been relieved of the charge of this stock, owing to some friction over his failure to keep the stock down to a point where it was satisfactory to his employer. When his attention was called to this discrepancy in the inventory, he promised to look into the matter and report back, but it was not disputed that he had never done so, at least in so far as his making a report was concerned; but it was claimed upon the trial, and perhaps with some support in the evidence, that this was due to the obstacles thrown in his way by the defendant's employé, one Connell, who had been placed in charge of the book stock before the discharge of the plaintiff, and who was in a measure, at least, hostile to the plaintiff. It appears that the plaintiff, thus superseded in one of the important branches of his department, brought an action in the Supreme Court asking for an injunction restraining the defendant from interfering with his rights under the contract of employment. Immediately after the service of these papers the plaintiff was dismissed, no reason being assigned other than what might be inferred from the facts as thus pointed out. Subsequently this action was withdrawn, plaintiff paying the costs, and he wrote a letter to the head of the corporation apologizing for his conduct in this respect, and promising to be useful to the corporation on the outside, although no longer in its employ.

It is important, in considering what inferences the jury might properly draw, to note the fact that in the matter of the inventory, if the error was honestly made and the goods were subsequently delivered to the purchasers, the error would correct itself in the inventory of the following year; that is, the $40,000 worth of goods would not be in stock, and the inventory would show that much less of sales for the year 1900 than would be the case if the inventory for the previous year had been correct; and, as there was nothing in the evidence to show that the plaintiff had any reason to expect his discharge at the end of 1899, we must assume that he intended to continue the deceit in the coming inventory, or that the error was one of inadvertence rather than of design, and the law, in the presence of such a condition, always assumes honesty. When it is remembered that the stock of goods under the charge of the plaintiff aggregated over $1,000,000; that it was a miscellaneous stock, requiring the assistance of over 200 persons in its management; that the inventory was taken by subordinates, and that such an error as was found might easily have happened without either negligence of a culpable character or design on the part of the plaintiff—we think the court would not have been justified, as a matter of law, in holding that this mistake of $40,000 in the inventory, which did not promise to be of

any permanent advantage to the plaintiff, unless we assume that he intended to continue the error in the future, was sufficient to constitute a breach of the contract of employment. It seems equally clear to us that the mere fact that the plaintiff brought an action against the defendant to prevent an interference with his rights under the contract, which depended for its value in some measure upon his personal efforts, did not amount to insubordination which would justify his discharge. The action might not have been well-advised; the plaintiff might better, perhaps, have taken other steps to vindicate himself and to preserve his rights; but it is not for this court to say that one who invokes its aid is guilty of any wrong against his employer unless it appears that the action was taken for the purpose of unnecessarily embarrassing or annoying such employer, and we think this did not appear in the case at bar. The plaintiff had been in his position for 15 years, and, so far as the evidence goes, he had never been accused of any irregularities, the only suggestion of fault-finding being in reference to the continual growth of the stock under his charge; but even this appears to have been accepted without any great amount of friction, and was acquiesced in by the continued employment of the plaintiff after his contract had expired. He had rights under his contract. He was interested in the profits to be earned by the department, and when he found himself being undermined by one whom he had promoted to the position of assistant manager, and discovered a disposition on the part of those who had trusted him to question his integrity or his capacity, and perhaps to acquiesce in the hostility of this man who had thus been put into control of one of the stocks of his department, it is not to be wondered at that he abandoned his effort to investigate, and resorted to the courts in the hope of bringing about an adjustment of his affairs. If he acted honestly in the matter, and for the purpose of protecting his rights, however foolishly he may have acted, he is not to be deprived of his rights, and we are of opinion that the question presented by the evidence was for the jury to determine, and we are not disposed to interfere with the result.

We think no reversible error is presented by the record in this case. The plaintiff, as a witness, had a right to state the gross amount of the sales of his department in a given year, where he had received his compensation upon the basis of such sales, and the objection that the books were the best evidence of this fact is not supported by the facts. The witness was testifying as to his knowledge of facts, and, if he refreshed his memory from figures upon a slip of paper, no objection was made to this. But the question to which special objection was made, and to which attention is called at folios 105 and 106, was not answered, although the witness made some response to the effect that he knew about the matters. He was asked, "What was the amount of the gross sales of these six months of 1900?" Defendant objected on the ground that the best evidence of this fact was the books. The objection was overruled, and the witness replied: "I know, and I have them computed; made extracts from the books. I have a memorandum kept by my book-keeper for me. I have computed it. I made a computation of the

gross sales from the books." But he nowhere tells what those gross sales were until, upon cross-examination, he gives a statement of the amount in response to the defendant's question, and the same appears in evidence without exception.

The judgment and order appealed from should be affirmed, with costs. All concur.